IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:08CR00001-001 and |
| v. | ) | 4:07CR00026 |
| | ) | |
| SHIRLAND L. FITZGERALD, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |
| | ) | |
| | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| | ) | |

Before me is Defendant's Motion to Suppress and Return Property. I heard oral argument on this motion on November 17, 2008, and it has been briefed by the parties. I have also allowed the parties to file additional written submissions specifically addressing this Court's concerns raised during oral argument. This matter is now ripe for decision. For the reasons given below, I will **DENY** the Defendant's Motion to Suppress and Return Property.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 27, 2003, law enforcement officers executed a search warrant at a residential mobile home occupied by Robert DeNova in Pittsylvania County, Virginia. During the lawfully executed search, officers located large quantities of marijuana and cocaine, packaging materials, owe sheets, and other evidence linking the mobile home owner and others to the illegal trafficking of narcotics. During the search, law enforcement also located documents pertaining to the acquisition of motor vehicles from Fitzgerald's Auto Sales by suspected drug dealers, including Jarrett Doss.

During the afternoon hours of April 28, 2003, law enforcement officers went to the premises of Fitzgerald's Auto Sales located at 1080 Riverside Drive, Danville, Virginia to obtain

records related to the sale of motor vehicles to DeNova and others. When officers initially arrived at Fitzgerald's Auto Sales, the premises were empty and the business was closed. A law enforcement officer, posing as a potential car buyer, phoned Shirland Fitzgerald ("the Defendant") and asked him to leave his home and return to his place of business. When Fitzgerald arrived at his business, he was approached by several law enforcement officers. They told him to open the door to his car lot and he complied. They requested his consent to search his business for records related to Jarrett Doss and other individuals referenced in the documents discovered during the search of Robert DeNova's mobile home. Fitzgerald refused to consent to the search and told them they could search only if they could produce a warrant. The officers advised him that they were going to obtain a warrant and return to the premises. Several officers remained with Fitzgerald while they waited for a search warrant to be obtained.[1]

Task Force Officer Jeff Robertson traveled to the state magistrate in Danville to obtain a search warrant (the "initial warrant") for Fitzgerald's place of business. After discussing the matter with the magistrate, he obtained a search warrant to search the premises and seize certain documents including "all documents consistent with the laundering of drug proceeds." (Def.'s Mot. to Suppress and Return Property and Mem. in Supp. Ex. A.) The initial warrant did not have the time of issuance on the face of the warrant.[2]

Officer Robertson submitted an affidavit to the state magistrate to support the issuance of

---

[1] There is a factual dispute as to the circumstances of Fitzgerald's presence while the officers waited for the search warrant to be obtained. The Government contends that Fitzgerald was free to leave the premises at any time while they waited for the warrant. (Resp. to Mot. to Suppress 3.) The Defendant argues that the officers made him sit in a desk chair while Officer Robertson obtained the initial warrant. The Defendant also states that when he tried to get out of the chair and follow the officers into a back room, one of the officers pushed him back into the chair and told him to stay there. (Def.'s Resp. to Government's Supplemental Resp. to Mot. to Suppress 2.)

[2] Although the initial warrant contains the date of issuance, there is no time provided. The Government acknowledges that while the time of issuance is not set out in the warrant, the warrant was executed at 5:30 p.m on April 28, 2003.

the initial search warrant.[3]  The affidavit in support of the initial warrant contains in relevant

part:

> On April 27, 2003 a search warrant was executed in Pittsylvania County, Virginia and a substantial amount of marijuana was seized.  During the search, documents in the name of J&D Leasing/Jarrett Doss, Jared Doss, Shawn Samuels, Michael Henderson II, Crystal Tuck, Clarence Martin Jr., Robert DeNova, Michael Farmer, and Eddie Fielder were found during the search of the residence.  Documents further seized from the residence and your affiant's experience indicates that the individuals listed in paragraph 3 have purchased vehicles from Fitzgerald Auto Sales in the past.  On April 28, 2003, your affiant's investigation revealed that Crystal Tuck was operating a GMC Envoy purchased by J&D leasing from Fitzgerald's Auto Sales in April of 2003.  Experience has shown that drug traffickers utilize family members, others close to them, businesses, and conveyances to conceal proceeds of their drug trafficking profits.  It is your affiants training and experience that sellers of automobiles are required to maintain and store records at their respective business location.

(Def.'s Mot. to Suppress and Return Property and Mem. in Supp. Ex. B.)

After obtaining the initial search warrant, Officer Robertson immediately returned to

Fitzgerald's Auto Sales to execute the initial warrant.  During the search pursuant to the initial

warrant, officers seized "various documents relating to the sale of conveyances," including

documents suggesting that Fitzgerald's Auto Sales or its customers were engaged in a pattern of

money laundering activities.  (Def.'s Mot. to Suppress and Return Property and Mem. in Supp.

Ex. E.)  The officers located receipts and invoices stating that customers paid Fitzgerald cash

down payments in amounts of less than $10,000.  The records purported to show that the balance

was also paid in increments of less than $10,000, within a short period of time.  Fitzgerald stated

to officers that he had received large sums of money from customers as down payments and the

customers later made larger payments to satisfy their liens.

Based on the documents found during the initial search of Fitzgerald's place of business,

---

[3] The affidavit for the initial warrant states that Officer Robertson was advised of the material facts set forth in the affidavit by an informer.  At oral argument, the Government proffered that this is a simple typographical error and

as well as his statements to officers during the search, Officer Robertson returned to the state magistrate's office and obtained a second search warrant (the "second warrant"). This warrant, issued at 7:57 p.m. authorized the seizure of "documents relating to the sale or purchase of conveyances" as evidence pertinent to the offense of money laundering. (Def.'s Mot. to Suppress and Return Property and Mem. in Supp. Ex. C.) Officer Robertson returned and executed the second warrant at 8:15 p.m. The return on the second warrant states that officers seized "various documents relative to the sale of conveyances." (Def.'s Mot. to Suppress and Return Property and Mem. in Supp. Ex. F.) The officers essentially seized all of Fitzgerald's records, approximately five file boxes, pertaining to motor vehicle sales by Fitzgerald's Auto Sales.

On April 29, 2003, based upon the physical and oral evidence obtained, officers obtained a third search warrant (the "third warrant") for Fitzgerald's residence at 118 Berman Drive, Danville Virginia. Based upon the physical and oral evidence obtained during the execution of the three search warrants related to Fitzgerald's place of business and residence, the Government indicted Fitzgerald on the instant offenses. The Defendant filed this Motion to Suppress seeking to exclude all oral and physical evidence obtained during the execution of the three search warrants. He argues that the initial warrant was invalid on its face and unlawfully executed, thereby tainting the subsequent searches of his business and home.

## II.    STANDARD OF REVIEW

The Fourth Amendment of the United States Constitution requires that all searches and seizures be supported by a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 357 (1967). Probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."

---

that the officer relied on his personal knowledge in the affidavit.

*Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Probable cause is determined by the totality of the circumstances, seen from the point of view of "a man of reasonable prudence."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  Probable cause means that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  Warrantless searches of a dwelling place are presumptively unreasonable absent exigent circumstances.  *Payton v. New York*, 445 U.S. 573, 586-87 (1980).

A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause *de novo*.  Instead, the court's task is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed.  *Gates*, 462 U.S. at 238-39.  In doing so, courts are to give the magistrate's determination "great deference."  In addition, courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than commonsensical, manner.  *See id.* at 236; *United States v. Gary*, 420 F. Supp. 2d 470, 476 (E.D. Va. 2006), *aff'd*, 528 F.3d 324 (4th Cir. 2008).  To assess a magistrate's finding of probable cause, a reviewing court may look only at the evidence provided to the magistrate, as well as any reasonable inferences that may be drawn therefrom.  *Gates*, 462 U.S. at 235.

## III.    DISCUSSION

### A.    *The Affidavit for the Initial Warrant Establishes a Substantial Basis for a Finding of Probable Cause*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  Except in limited circumstances not relevant in this case, a search may be made only if authorized by a search warrant issued on a showing of probable cause.  *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004) (citing

*Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528-29 (1967)). When reviewing a magistrate's determination of probable cause, a court does not assess the existence of probable cause *de novo*. Instead, a reviewing court ascertains whether the magistrate had a substantial basis for concluding that probable cause existed. *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993).

Fitzgerald challenges the validity of the initial search warrant on several bases and argues that the illegality associated with the initial warrant taints the subsequent searches of his business and home. Thus, the focus of this Court's inquiry centers on the legality of the initial warrant. Fitzgerald argues that there was no probable cause to support the initial warrant and that the warrant was based on conclusory statements and not objective facts. He also contends that the initial warrant is based on an uncorroborated hearsay statement by an unidentified informant whose credibility is not established. Finally, the Defendant asserts that the magistrate failed to place the time of the initial warrant's issuance on its face. After considering these arguments challenging the sufficiency of the initial warrant, I find that the magistrate had a substantial basis for concluding that probable cause existed for a search of Fitzgerald's place of business.

The affidavit submitted in support of the initial search warrant contains facts which are sufficient to support probable cause for a search of Fitzgerald's place of business. The magistrate was told that a substantial quantity of drugs and documents pertaining to the acquisition of motor vehicles from Fitzgerald's Auto Sales were found during a search the day before the initial warrant was obtained. The magistrate made a reasonable inference that suspected drug traffickers had purchased vehicles from Fitzgerald's Auto Sales and that records related to those purchases, and evidence of potential laundering of drug proceeds would be found there. The affidavit also states that the experience of the officer concerning the habit of drug

traffickers to use family members, others close to them, and businesses to conceal the proceeds of their illegal activities. It also notes that sellers of automobiles typically keep records of automobile sales on their business premises. Thus, the affidavit establishes probable cause to believe that records related to the drugs and documents found during the April 27, 2003 search of Robert DeNova's mobile home would be found at Fitzgerald's place of business.

The Defendant's argument that the search warrant is based on uncorroborated hearsay statements is also without merit. This argument pertains to a box checked on the affidavit stating that the officer was advised of the facts set forth in the affidavit by an informant. At oral argument, the Government submitted that the check of this box was a clerical error since the affidavit cites only the personal experience and knowledge of the affiant. There is no evidence that the magistrate relied on any information from an informant to establish probable cause. In *United States v. Gary*, 528 F.3d 324 (4th Cir. 2008), the Fourth Circuit expressly addressed the issue of typographical errors in affidavits and held that an unintended typographical error did not compromise the magistrate's determination of probable cause. *See Gary*, 528 F.3d at 328-29. Likewise, the Defendant's argument that the magistrate's failure to place the time of the initial warrant's issuance on its face justifies the warrant's suppression is also unconvincing. The crux of the issue is whether the affidavit presented a substantial basis for a reasonable magistrate to believe the warrant was supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213 (1983) (affidavits should not be discarded for technical reasons). After reviewing the affidavit in support of the initial search warrant, I find that the magistrate in this case did have a substantial basis for a finding of probable cause.

**B.**     ***The Seized Evidence Is Admissible Under the Good Faith Exception to the Fourth Amendment***

Even if the initial warrant was not supported by probable cause, I find that the initial warrant should be upheld under the *Leon* good faith exception because the officers relied on a warrant issued by a detached and neutral magistrate. *See United States v. Leon*, 468 U.S. 897, 913 (1984). In fact, the Fourth Circuit recently did not even resolve whether search warrants were supported by probable cause because it held that the *Leon* good faith exception applied. *See United States v. Williams*, 548 F.3d 311, 317 (4th Cir. 2008); *see also United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994) (recognizing "that a reviewing court may proceed to a good faith exception without first deciding whether the warrant was supported by probable cause" (citing *Leon*, 468 U.S. at 925)).

The Supreme Court stated in *Leon* that "a court should not suppress fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 922 n.23). Under *Leon*'s good faith exception, "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was objectively reasonable." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922). Thus, the deterrence purpose of the exclusionary rule is not achieved through suppression of evidence obtained by an executing officer acting in good faith within the scope of a search warrant issued by a neutral magistrate. *See id.* (citing *Leon*, 468 U.S. at 920).

The *Leon* good faith exception, however, is not available where (1) probable cause is based on statements in an affidavit that are knowingly false; (2) the magistrate wholly abandons his detached and neutral judicial role and instead merely rubber stamps the warrant; (3) the

supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant is so facially deficient that the executing officers could not reasonable presume it to be valid. *Leon*, 468 U.S. at 922-23; *see also Gary*, 528 F.3d at 329. Under these four circumstances, an officer's reliance on a warrant does not qualify as "objectively reasonable" and thus the *Leon* good faith exception does not apply. *See Perez*, 393 F.3d at 461.

After reviewing the written submissions of the parties, I find that none of these circumstances exist in the case at hand. The finding of probable cause was not based on knowingly false statements in the affidavit. Nor did the state magistrate abandon his detached and neutral role by "rubber stamping" the warrant for the police. There is no indication that the magistrate acted as an adjunct law enforcement officer or that he did anything more than review the officer's affidavit for the purposes of determining the existence of probable cause. The fact that the warrant did not contain the time of issuance on its face and that the affidavit contained a clerical error regarding the use of an informant does not amount to the magistrate becoming a rubber stamp for the police. *See Gary*, 528 F.3d at 329 (holding that a magistrate's failure to catch an error in the date does not show that the magistrate failed to perform a neutral and detached function). Furthermore, there is no evidence that the initial warrant was so facially deficient that the executing officer's reliance on it was not objectively reasonable.

The Defendant argues that there was not a sufficient nexus between Fitzgerald's place of business and the alleged drug activity. He contends that the affidavit for the initial search warrant was merely a "bare bones" affidavit that is unworthy of the *Leon* good faith exception. I disagree. The affidavit states that documents containing the names of suspected drug dealers were found during a lawful search of a residence where a substantial amount of drugs were

seized.  Documents also showed that these individuals purchased vehicles from Fitzgerald's Auto Sales in the past.  The affidavit states that sellers of automobiles are required to maintain sales records at their business locations.  The magistrate made the reasonable inference that documents could be found at Fitzgerald's place of business pertaining to money laundering of drug trafficking profits.  Magistrates and judges use a "totality of the circumstances" analysis when issuing warrants and making probable cause determinations.  The magistrate views the facts and circumstances as a whole and makes a common sense determination of whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Williams*, 548 F.3d 311, 320 (4th Cir. 2008) (citing *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005)).  I conclude that based on the information in the affidavit for the initial search warrant, the magistrate could reasonably conclude that documents pertaining to the sale of automobiles to suspected drug traffickers could be found at Fitzgerald's Auto Sales.

C.      ***Fitzgerald's Detention After Refusing Consent to Search Does Not Taint the Subsequently Obtained Search Warrants***

After hearing evidence on Fitzgerald's Motion to Suppress on November 17, 2008, I expressed concern about the Defendant's legal status prior to the initial warrant being obtained and executed at Fitzgerald's place of business.[4]  According to the Government's own written submissions, the officers that greeted Fitzgerald immediately after he arrived at his place of business did not have a valid search warrant in their possession.  (Resp. to Mot. to Suppress 3.) Their admitted intention was to obtain a consensual search of his place of business without a search warrant. When Fitzgerald refused to grant consent to the officers to conduct their search, Officer Robertson left the premises and traveled to the state magistrate to obtain the initial

---

[4] The Defendant did not address this issue in his opening brief other than to state that he was in custody while

warrant. (Resp. to Mot. to Suppress 2-3.) Thus, it is clear from the record that law enforcement officers did not have a search warrant when they first went to Fitzgerald's Auto Sales on April 28, 2003.

The Defendant argues that he was "detained" by law enforcement officers after he refused consent to the search of his business. He states that he was lured to his business under false pretenses for the purpose of searching his business. Upon arriving at his business expecting to meet a potential car buyer, he was greeting by approximately ten to eleven law enforcement officers.[5] Some of the officers were wearing firearms visible to the Defendant. According to the Defendant, his freedom of movement was restricted when they told him to sit in an office chair and not to get up while officers waited for Officer Robertson to return with the initial warrant. He also contends that they never told him he was free to leave while they waited in his place of business.

The Government counters that there was nothing, besides their mere presence, that suggested the atmosphere at Fitzgerald's Auto Sales was police dominated. The Government argues that Fitzgerald was free to leave at anytime subsequent to his arrival at his business and prior to Officer Robertson returning with the initial warrant. I disagree. I conclude that luring the Defendant to his place of business and waiting there with him inside his business while the initial search warrant was subsequently obtained communicated to him that he was not free to leave or ignore the considerable police presence.

A seizure occurs when, taking into account the totality of the circumstances, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the

officers obtained the initial warrant. (Def.'s Mot. to Suppress and Return Property and Mem. in Supp. ¶ 10.)
[5] The number of officers was acknowledged by the Government in their Supplemental Response to Motion to

police presence and go about his business. *See Kaupp v. Texas*, 538 U.S. 626, 629 (2003);

*Florida v. Bostick*, 501 U.S. 429, 437 (1991). The Supreme Court has given several examples of

circumstances that might indicate a "seizure" within the meaning of the Fourth Amendment,

even when a person challenging the detention did not attempt to leave. *See United States v.*

*Mendenhall*, 446 U.S. 544, 554 (1980). Examples provided by the Court include "the

threatening presence of several officers, the display of a weapon by an officer, some physical

touching of the person of the citizen, or the use of language or tone of voice indicating that

compliance with the officer's request might be compelled." *Id.* In the case at hand, there were

upwards of ten to eleven armed law enforcement officers waiting for close to two hours with

Fitzgerald in his place of business while Officer Robertson obtained the initial search warrant

from the state magistrate. The Defendant was summoned to his place of business under false

pretenses by the police for the express purpose of searching his business. The Defendant also

alleges that he was forced to sit in a chair while the officers waited. In light of all the

circumstances in this case, I conclude a reasonable person in Fitzgerald's position would not

have felt free to leave or ignore the police presence while he waited in his business for the initial

warrant to arrive.

In the Government's Supplemental Response to the Motion to Suppress, the Government

relies on *United States v. Jefferson*, 562 F. Supp. 2d 707 (E.D. Va. 2008), to address Fitzgerald's

custody status while the officers waited for the initial warrant at his place of business.[6] In

*Jefferson*, the district court identified six factors that provide an analytical framework for

---

Suppress. (Supplemental Resp. to Mot. to Suppress 8.)

[6] The Defendant did not mention or cite *United States v. Jefferson* in his response to the Government's supplemental memorandum.

determining whether an individual is in custody during an interrogation.[7]  Although the court in *Jefferson* concluded that the defendant was not in custody during his questioning by law enforcement, *Jefferson* is distinguishable from the present case in a number of respects. Specifically, several of the factors used in the custody determination indicate Fitzgerald was in fact unlawfully detained.  Fitzgerald alleges that he was forced to wait in a desk chair while officers waited for the initial warrant to arrive.  This suggests that the Defendant did not have unrestrained freedom of movement while he waited with the officers.  Furthermore, strong arm tactics and deceptive practices were used to lure Fitzgerald to his place of business and then keep him there while Officer Robertson obtained the initial warrant.  Finally, the atmosphere was certainly police dominated since ten or more armed police officers waited with Fitzgerald at his place of business.  Thus, the application of the factors identified in *Jefferson* establishes that Fitzgerald was detained by the officers while they waited for the initial warrant to arrive.

Finding that Fitzgerald was unlawfully detained after refusing consent to the initial search of his business, the question remains as to whether that detention tainted the remaining proceedings.  I conclude that the evidence obtained pursuant to the initial search warrant is sufficiently distinguishable to be purged from the unlawful detention.  The detention did not taint the subsequent search warrants which I have already concluded were lawfully obtained and executed pursuant to the magistrate's determination of probable cause and the *Leon* good faith exception.  Thus, the only basis for invalidating the initial search warrant, as well as the second

---

[7] In *United States v. Jefferson*, the court identified the following factors which, while not individually determinative, are often important to a custody determination: (1) whether defendant was informed that he was not under arrest and that he was free to terminate the questioning; (2) whether defendant possessed unrestrained freedom of movement during questioning; (3) whether defendant voluntarily submitted to questioning; (4) whether the agents employed strong arm tactics or deceptive stratagems during questioning; (5) whether the atmosphere of the questioning was police-dominated; and (6) whether defendant was placed under arrest at the termination of the questioning.  562 F. Supp. 2d at 713-14.

and third search warrants, is the "fruit of the poisonous tree" legal doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

The basic rule for whether evidence derived from an illegal search should be suppressed is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *See Wong Sun*, 371 U.S. at 488. Generally, evidence derived from an illegal search is deemed fruit of the poisonous tree and is thus inadmissible. *See United States v. Najjar*, 300 F.3d 466, 477, (4th Cir. 2002). However, not all evidence conceivably derived from an illegal search need be suppressed if it is somehow attenuated enough from the Fourth Amendment violation to dissipate the taint. *See id.* To determine whether the 'fruit' is no longer poisonous, several factors are considered, including: (1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.*; *see also United States v. Gray*, 491 F.3d 138, 155 (4th Cir. 2007).

There is no question that very little time passed between Fitzgerald's detention and the search pursuant to the initial warrant.[8] However, the other two factors seem to weigh heavily in the Government's favor in this case. The arrival of a lawfully obtained search warrant to search Fitzgerald's business is an intervening circumstance which disconnects the unlawful detention from the initial search. Nothing in the affidavit of probable cause for the initial warrant contains any information obtained from Fitzgerald's detention at his place of business. All the factual information contained in Robertson's affidavit of probable cause was based on the knowledge of

---

[8] The Defendant stated during the November 17, 2008 suppression hearing that it took "an hour and a half to two hours" for the officers to come back with the initial search warrant. (Tr. of Pretrial Mot. Hr'g 37.)

the officers and facts obtained before they went to Fitzgerald's Auto Sales on April 28, 2003.[9]

There was no effort by Officer Robertson to deceive the state magistrate that issued the initial search warrant and the probable cause affidavit contained nothing derived from Fitzgerald's detention at his place of business. By the Defendant's own admission at the suppression hearing, he recalls no conversation between him and the officers while he waited for the initial warrant to arrive. (Tr. of Pretrial Mot. Hr'g 44, Nov. 17, 2008.)

Therefore, the search pursuant to the initial search warrant, as well as the other searches pursuant to the second and third warrants, was not tainted by Fitzgerald's detention because the officers did not obtain anything from Fitzgerald while they waited for Officer Robertson to arrive with the initial warrant. The exclusionary rule, as articulated in *Wong Sun v. United States*, 371 U.S. 471 (1963), cannot be used to exclude the evidence obtained pursuant to the valid search warrants in this case. Given the establishment of the primary illegality of Fitzgerald's detention, I find that the evidence in question did not come about by the exploitation of that illegality. Instead, the evidence came about from lawfully obtained search warrants, a means 'sufficiently distinguishable' to purge the evidence from the primary taint of the unlawful detention.[10] Thus, Fitzgerald's detention did not taint the initial search warrant and the fruits

---

[9] Indeed, much of the information was derived from the search of Robert DeNova's mobile home a day earlier as well as the personal knowledge and experience of the law enforcement officers. (*See* Def.'s Mot. to Suppress and Return Property Ex. B.)

[10] Indeed, this is not a case where the exclusionary rule does not apply because the Government learned of the evidence from an independent source, *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920), nor is this a case where the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. *Nardone v. United States*, 308 U.S. 338, 341 (1939).

following thereof.  Likewise, the second and third warrants were also not tainted by Fitzgerald's detention at his business while the officers waited for the initial warrant.

**IV.** **CONCLUSION**

For the reasons stated above, I will **DENY** Defendant's Motion to Suppress and Return Property.  An appropriate Order will be entered.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 6th day of January, 2009.

s/Jackson L. Kiser
Senior United States District Judge